MELODY A. KRAMER, SBN 169984
KRAMER LAW OFFICE, INC.
9930 Mesa Rim Road, Suite 1600
San Diego, California 92121
Telephone (858) 362-3150

J. MICHAEL KALER, SBN 158296
KALER LAW OFFICES
9930 Mesa Rim Road, Suite 200
San Diego, California 92121
Telephone (858) 362-3151

Attorneys for Plaintiff JENS ERIK SORENSEN,
as Trustee of SORENSEN RESEARCH AND
DEVELOPMENT TRUST

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENS ERIK SORENSEN, as Trustee of SORENSEN RESEARCH AND DEVELOPMENT TRUST,<br><br>     Plaintiff<br>   v.<br><br>SENCO PRODUCTS, INC., an Ohio Corporation; and DOES 1 – 100,<br><br>     Defendants. | Case No. 3:08-cv-00071 BTM CAB<br><br>**REPLY TO OPPOSITION TO PLAINTIFF'S MOTION FOR EXCEPTION TO STAY TO PRESERVE EVIDENCE**<br><br>Date:  August 20, 2008<br>Time:  11:30 a.m.<br>Courtroom: 15, Fifth Floor<br>Judge:  Hon. Barry T. Moskowitz<br><br>*Oral argument is respectfully requested by Plaintiff* |

**SUMMARY OF REPLY**

Defendant has failed to demonstrate any sound reason why the Court should not allow Plaintiff to take steps to ensure preservation of physical evidence of the accused manufacturing process, evidence is currently held by unidentified third parties. Those third parties have no incentive to preserve evidence, nor does the Defendant.

Reexamination of a patent does not make it "suspect," nor does it minimize the need to preserve evidence. Plaintiff's requests are narrow, concise and unambiguous. Senco has not provided Plaintiff with actual manufacturing information, nor with the ability to obtain it on his own. Preservation of this necessary evidence can only be assured through allowing the requested, narrow exception to stay, or conducting a 35 U.S.C. § 295 hearing to switch the burden of proof to the party having superior access to the evidence.

**ARGUMENT**

This Court's order of stay stated that "Any party may apply to the court for an exception to the stay if it has specific, valid reasons to believe that it needs to obtain discovery in order to preserve evidence that will otherwise be unavailable after the stay." *Order Granting Defendants' Motion for Stay Pend. Reexam*, Docket 20, 2:5-7.

Because the stay order issued prior to any discovery being permitted in the case, Plaintiff reasonably construed the above language to take into account the inability of Plaintiff to provide more specificity to requests for exceptions to stay than would be available with the benefit of formal discovery. Any greater requirement for specificity would render this portion of the Court's order without effect.

///

///

## I. ACCEPTANCE OF A PATENT FOR REEXAMINATION DOES NOT MAKE IT "SUSPECT."

Defendant's blithe assertion that Plaintiff's patent is "**suspect**" must be addressed because it taints the entire Opposition. The Plaintiff holds a valid and enforceable patent and it should be treated as such before this Court.

U.S. Patent No. 4,935,184 was issued by the United States Patent and Trademark Office ("USPTO") on June 19, 1990 after 28 months of running the gauntlet of the vetting process set forth by U.S. patent laws. No requests for reexamination of the patent were made with the USPTO for almost 20 years while the patent holder was issuing licenses for the patent. Only when Plaintiff filed a $1.44 billion lawsuit against Black & Decker and its suppliers on the '184 patent did those defendants file requests for reexamination of the patent. Even that request was not filed until after almost a year of litigation and a claim construction hearing was imminent.

*Ex parte* reexamination requests to the USPTO are a procedure whereby anyone, even anonymously, can assert that there are problems with a patent. Ninety-six percent of all such requests result in a reexamination being conducted. However, only around 10% of such requests result in cancellation of all claims in a patent. *Kramer Decl. #2* ¶ 4. The results of an *ex parte* reexamination request are not binding on the requestor.

Unfortunately, the request review process uses the loaded term "substantial question of patentability" as the measure of whether a request will be accepted for review. While the ordinary meaning of the words suggests a high likelihood that there is some problem with the validity of the patent, the term of art does not have that meaning. Instead, the USPTO's Manual for Patent Examination Procedure ("MPEP") specifically states that "no *prima facie* case of unpatentability need be found to grant an order for reexamination. . . ." *MPEP* § 2240 (emphasis added).

"Substantial question of patentability" for purposes of acceptance of a reexamination request means that a patent examiner would find the cited reference "important" to review; it does not mean a *prima facie* case of invalidity, nor a substantial probability that the patent will be invalidated.

> For "a substantial new question of patentability" to be present, it is only necessary that: (A) the prior art patents and/or printed publications raise a substantial question of patentability regarding at least one claim, i.e., the teaching of the (prior art) patents and printed publications is such that a reasonable examiner would consider the teaching to be <u>important</u> in deciding whether or not the claim is patentable; and (B) the same question of patentability as to the claim has not been decided by the Office [previously]. . . . It is not necessary that a "*prima facie*" case of unpatentability exist as to the claim in order for "a substantial new question of patentability" to be present as to the claim. Thus, "a substantial new question of patentability" as to a patent claim could be present even if the examiner would not necessarily reject the claim . . . .

*MPEP* § 2242.

The fact that the USPTO finds a "substantial question of patentability" in 96% of reexamination requests filed with its office, though only 10% eventually result in complete cancellation of the patent well illustrates how minimal the USPTO's initial review must be before accepting a reexamination request.

Describing a patent as being "suspect" simply because the USPTO has accepted an *ex parte* reexamination request for processing is grossly misleading. The reality is that every *ex parte* reexamination request that includes the properly filled in and artfully worded forms and at least one piece of prior art that is arguably related to the broad category of technology of the patent is accepted.

The '184 patent is not "suspect," and decisions regarding preservation of evidence relating to infringement are no less worthy of consideration because an accused infringer's reexamination request was one of the 96% of such requests that proceed to reexamination with the misleading description of having a "substantial question of patentability."

## II.  PLAINTIFF'S REQUESTS FOR INFORMATION ARE NARROW, CONCISE, AND UNAMBIGUOUS.

Plaintiff has requested only one, narrow category of information from Defendant - sworn identification of the manufacturer(s), supplier(s), and/or importer(s) of the accused products. The other request is that Defendant not interfere in the conduct of third-party discovery.

Defendant's contention that Plaintiff is strategizing to "run up the costs" is not only untrue, but nonsensical. Defendant had several opportunities to provide the requested information informally before this motion was filed, or by stipulation after the motion was filed, but refused.[1] *Kramer Decl.* #2 ¶ 5.

There is no expenditure of large amounts of court and party resources in supplying a simple, sworn, list of names and addresses of all manufacturers, suppliers, and importers of the Accused Products.

Senco's claims that Plaintiff has not been explicit enough in describing evidence sought to be preserved is disingenuous. Simple English descriptions were used, and Senco's counsel claimed inability to understand them does not render plain English ambiguous.

Plaintiff asked for "prototype and production molds used in the production of the Accused Products" and "design and technical documents" for the accused products. Senco has known from the original notification in this matter what portion of the single Senco product is accused of infringement – the external plastic shell. This notification was first made by letter dated July 7, 2005, from SRDT counsel, Mr. Kaler, along with a drawing, claim chart, and copy of the '184 patent. In the Complaint, Plaintiff also identified the accused component as the dual-layer external plastic shell of the Senco Collated Screw Driver, Model No. DS200-AC. Docket #1, ¶¶ 16 and 17.

---

[1] Several other defendants similarly situated did cooperate in this manner and no Motion for Exception to Stay was filed with the Court in those cases.

Anyone who has made jello knows what a mold is. A mold used in the production of accused products is, in simple layman's terms, the structure into which plastic is injected to form a plastic product, in this case, an external plastic shell of a screw driver. The designation of "prototype" and "production," again in layman's terms, refers to either the test version or the version used for production of the product. Asking for clarification of plain English should be treated as what it is – disingenuous failure to cooperate and attempts to gain delay.

Likewise, design and technical documents relating to those products -- the accused portion of which is known to be the external plastic shell -- hardly qualifies as an ambiguous request. The entire point of this request is not to engage in extensive, detailed discovery now, but rather to require the party with superior access to essential manufacturing process information to allow Plaintiff to ensure preservation of that evidence.

### III. SENCO HAS DENIED PLAINTIFF MANUFACTURING EVIDENCE AND THE OPPORTUNITY TO SEEK IT FROM SUPPLIERS.

For three years, Plaintiff sought through repeated requests pursuant to 35 U.S.C. § 295, to obtain reliable information about the Accused Processes from Senco. None has ever been received. *Kramer Decl. #2 ¶ 6*. The Chen document referenced in Senco's pleadings comes no where close to admissible evidence in a U.S. court of law, and does not allow for Plaintiff to conduct any follow-up to test the veracity of its statements. See *Kramer Decl.* #2 ¶ 7-15.

By way of example of its deficiencies, Mr. Chen is a Chinese citizen, immune from legal process of United States courts and thus immune from any efforts by Plaintiff to cross-examine his statements or depose him to learn the basis of his statements. Mr. Chen claims only to be a tooling manager for Techtronic Industries Co. Ltd. ("TTI"), a Hong Kong company, however, also claims to be testifying as to the "corporate knowledge" of three U.S. companies for whom he does not work. See

1  *Kramer Decl.* #2 ¶ 7-15.

2  By the representations in the Chen document, "TTI contracts out the fabrication of some of the many components of the Senco [accused product] to other manufacturing entities." Thus he is saying not even the companies on whose behalf he claims to be testifying are not the actual manufacturers of the product in question. This claim is consistent with testimony of Mr. Bugos that was submitted with the moving papers to this motion. See *Kramer Decl.* #2 ¶ 7-15.

The document does not contain any identification of manufacturing location or details that can be verified or cross-checked. The brief description of the manufacturing process is insufficient to verify or compare with the product itself. See *Kramer Decl.* #2 ¶ 7-15.

The Chen document is further undermined by Senco's claim in their Opposition that it doesn't even know what part of the Accused Product is at issue.[2] How could Mr. Chen know what portion of the Accused Product was being evaluated if Senco claims to not know?

Cases cited by Senco trying to buttress the Chen document do not support their position. In *American Home Assurance Co. v. Zim Jamaica*, 296 F.Supp.2d 494, the court was faced with the question of sufficiency of evidence to support plaintiff's motion for summary judgment, not admissibility of a contested declaration. The Court did make it clear that a declaration was far inferior to deposition and cross-examined testimony, though.

> FN8. Nasm and Xiji have submitted declarations in support of plaintiff's motion, but have not been deposed or otherwise subject to cross-examination. The Court makes no finding here as to either Nasm or Xiji's credibility, but notes that **deposition testimony generally is more**

---

[2] In its Opposition at 3:15-16, Senco says "Which molds of the many components used in the Senco Collated Screw Driver?" How can Senco claim to have conducted an adequate investigation when it apparently hasn't even read SRDT's first letter with accompanying drawings, claim chart, and patent?

  **reliable than an affidavit.**

*American Home*, at 503.

  In *Commodity Futures Trading Comm'n v. Topworth Int'l Ltd.*, 205 F.3d 1107 (9th Cir. 2000), the court found the district court's failure to consider a Chinese declaration as part of the record to be error, but concluded that it was harmless error. *Commodity Futures* at 1113. Unlike the *Commodity Futures* case, Senco is suggesting that this Court and Plaintiff must wholly rely upon a Chinese national's declaration as the only evidence of the actual manufacturing process at issue in this case.

  Senco has not provided actual manufacturing process information and has not provided information sufficient for Plaintiff to take any steps it can to obtain that information. That is all Plaintiff is seeking at this point.

**IV. ABSENT IDENTIFICATION OF THIRD PARTIES WHO POSSESS MANUFACTURING PROCESS INFORMATION, PLAINTIFF HAS NO ASSURANCE OF PRESERVATION OF NECESSARY EVIDENCE.**

  In *Sorensen v. Black & Decker*, Case No. 06CV1572, this Court allowed limited discovery to permit plant inspections of a third-party Missouri manufacturer because

> [The Court]: . . . [The manufacturers] are not a party. They are really under no obligation to keep the molds and store the molds at their expense, and I think the examination of the molds is appropriate . . ., the only way to do it is to allow you to apply for a Rule 45 and Rule 34 subpoena.

June 3, 2008 hearing in *Sorensen v. Black & Decker*, Case No. 06CV1572 (page 23 attached).

  It is unknown whether these unidentified non-parties are still manufacturing the Accused Products, or when such manufacture will cease. The Products may go out of production before the stay is lifted, which would be detrimental to Plaintiff

because the molds could no longer exist.

The inherent problem in not granting the relief requested is that during the pendency of a stay of undetermined duration, the parties with actual access to manufacturing process information are both outside of the jurisdiction of this Court and have no incentive to preserve evidence. The party with superior access via its supplier relationships – Senco – also has no incentive to preserve evidence.

## V. THE 35 U.S.C. § 295 PRESUMPTION WOULD PROVIDE PARTIES WITH EVIDENCE THE INCENTIVE TO PRESERVE IT.

The 35 U.S.C. § 295 presumption of infringement is intended to address the difficulty of proof that the patented process was used when the party with the best control of the evidence has no incentive to provide it to the other party. 35 U.S.C. § 295 was passed to help U.S. patent holders deal with the increasing number of foreign manufacturers importing infringing products into the United States, and the difficulty in obtaining discovery of manufacturing processes from such foreign manufacturers:

> This presumption addresses a great difficulty a patentee may have in proving that the patented process was actually used in the manufacture of the product in question in those cases, where the manufacturer is not subject to discovery under the Federal Rules of Civil Procedure. For example, patent owners will frequently be unable to obtain information concerning the nature of processes being practiced by foreign manufacturers. Shifting the presumption should create no substantial burden, as an accused infringer should be in a much better position to establish that the product was made by another method.

*House Committee on the Judiciary, Process Patents Amendments Act of 1987*, H.R. REP. NO. 100-60, at 16 (1987).

The intent of Section 295 is to place the burden of proving/disproving infringement <u>on the party in the best position to offer the proof</u>. In most cases, the importer who, by reason of their relationship with the manufacturer, is in the best

position to get process information:

> Importers, for example, because of their relationships with foreign manufacturers, may be able to exert pressure on such manufacturers to produce the necessary information. Users and sellers who purchase possibly infringing articles from importers may be able to exert similar pressure on those importers, who would in turn influence foreign manufacturers.

*Senate Committee on the Judiciary, Process Patents Amendment Act of 1987*, S. REP. NO. 100-83, at 57 (1987).

With this in mind, the legislature intended the threshold for the burden shifting to be far less than that of requiring the patent holder to submit letters rogatory:

> A reasonable effort requirement could easily be satisfied in the United States through our discovery procedures. For a foreign manufacturer the patentee would have to take some reasonable step, <u>such as writing to the manufacturer</u>, to determine how the product was made and to have been unsuccessful in this regard. The reasonableness of the effort would depend on the facts of the case but should generally avoid the need for such measures as letters rogatory or suits in a foreign country.

*Senate Committee on the Judiciary, Process Patents Amendment Act of 1987*, S. REP. NO. 100-83, at 45 (1987) emphasis added.

The legislative history is abundant that the purpose of section 295 is to lift from the shoulders of patent holders the undue burden of pursuing discovery options outside the Federal Rules against manufactures in foreign countries.

In this case, Defendant is relying upon a stay to further complicate Plaintiff's ability to collect and preserve evidence of the accused process. Without identification of the manufacturers of the accused products, Plaintiff cannot even write a letter to the manufacturer and seek cooperation.

Because of the stay, no request for invoking the 35 U.S.C. § 295 presumption of infringement has yet been filed. However, the purpose of section 295 is directly relevant to this preservation of evidence motion.

To avoid undue prejudice to the Plaintiff, this Court should either allow the

1 narrow, limited discovery that is being sought, or entertain a 35 U.S.C. § 295 motion
2 that would assign the burden of proof of infringement to the parties that are in the
3 best position to obtain and preserve manufacturing process information.

## CONCLUSION

Defendant has presented no credible excuse or reason why Plaintiff should not be given a sworn list of the third parties that have possession of evidence essential to this case. Disparaging the subject patent as "suspect," is the most egregious, yet singularly unmeritorious argument.

Plaintiff has requested a narrow category of identification(s) and leave of the Court to pursue any available procedural remedies to ensure preservation of evidence that is outside of the control of the parties to this case and outside of the jurisdiction of this Court.

If the Court is unwilling to grant this narrow discovery, leaving essential evidence hiding behind the skirts of the Defendant during the pendency of stay, then the Court should ensure a level playing field by allowing Plaintiff to file a motion for invocation of the 35 U.S.C. § 295 presumption of infringement to switch the burden of proof of the manufacturing process to the Defendants. This would allow the Court to align the obligation and incentive to ensure manufacturing process information with the party that has superior (and only) access to it.

DATED this 13th day of August, 2008.

> JENS ERIK SORENSEN, as Trustee of
> SORENSEN RESEARCH AND DEVELOPMENT
> TRUST, Plaintiff
>
> /s/ Melody A. Kramer, Esq.
> _____
> J. Michael Kaler, Esq.
> Melody A. Kramer, Esq.
> Attorneys for Plaintiff

**PROOF OF SERVICE**

I, Melody A. Kramer, declare: I am and was at the time of this service working within in the County of San Diego, California. I am over the age of 18 year and not a party to the within action. My business address is the Kramer Law Office, Inc., 9930 Mesa Rim Road, Suite 1600, San Diego, California, 92121.

On Wednesday, August 13, 2008, I served the following documents:

**REPLY TO OPPOSITION TO PLAINTIFF'S MOTION FOR EXCEPTION TO STAY TO PRESERVE EVIDENCE**

**DECLARATION OF MELODY A. KRAMER # 2 IN SUPPORT OF PLAINTIFF'S REPLY TO OPPOSITION TO MOTION FOR EXCEPTION TO STAY TO PRESERVE EVIDENCE**

| PERSON(S) SERVED | PARTY(IES) SERVED | METHOD OF SERVICE |
|---|---|---|
| Roger G. Perkins<br>Angela Kim<br>Kristina M. Pfeifer<br>MORRIS POLICH & PURDY LLP<br>501 West Broadway, Suite 500<br>San Diego, California 92101<br>rperkins@mpplaw.com<br>akim@mpplaw.com<br>Kpfeifer@mpplaw.com | Senco Products, Inc. | Email - Pleadings Filed with the Court via ECF |
| Robert S. Mallin<br>Brinks Hofer Gilson & Lione<br>NBC Tower<br>455 N City Front Plaza Drive<br>Suite 3600<br>Chicago, IL 60611<br>rmallin@brinkshofer.com | Senco Products, Inc. | Email - Pleadings Filed with the Court via ECF |

☐ (Personal Service) I caused to be personally served in a sealed envelope hand-delivered to the office of counsel during regular business hours.

☐ (Federal Express) I deposited or caused to be deposited today with Federal Express in a sealed envelope containing a true copy of the foregoing documents with fees fully prepaid addressed to the above noted addressee for overnight delivery.

11.

Case No. 3:08-CV-00071 BTM (CAB)

1  ☐ (Facsimile) I caused a true copy of the foregoing documents to be transmitted by facsimile machine to the above noted addressees.  The facsimile transmissions were reported as complete and without error.

2

3

4  ☐ (Email) I emailed a true copy of the foregoing documents to an email address represented to be the correct email address for the above noted addressee.

5

6  ☒ (Email--Pleadings Filed with the Court) Pursuant to Local Rules, I electronically filed this document via the CM/ECF system for the United States District Court for the Southern District of California.

7

8  ☐ (U.S. Mail) I mailed a true copy of the foregoing documents to a mail address represented to be the correct mail address for the above noted addressee.

9

10  I declare that the foregoing is true and correct, and that this declaration was executed on Wednesday, August 13, 2008, in San Diego, California.

11

12

13                                                              /s/ Melody A. Kramer
                                                                Melody A. Kramer

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

12.                                                Case No. 3:08-CV-00071 BTM (CAB)

```
 1              UNITED STATES DISTRICT COURT
          FOR THE SOUTHERN DISTRICT OF CALIFORNIA
 2

 3                                  )
     JENS ERIK SORENSEN, et al.,     )
 4                                   )
               Plaintiff,            ) Case No. 06CV01572BTM
 5                                   )
                                     )
 6               vs.                 )
                                     )
 7   THE BLACK & DECKER              )
     CORPORATION, a Maryland         )
 8   corporation,

 9             Defendants.
                                     ) San Diego, California
10                                   )
                                     ) June 3, 2008
11                                   )
                                     ) 9:309 a.m.
12                                   )

13
                         Motion Hearing
14
             BEFORE THE HONORABLE BARRY TED MOSKOWITZ
15                UNITED STATES DISTRICT JUDGE

16
     APPEARANCES:
17
     For the Plaintiff:           Kaler Law Offices
18                                J. Michael Kaler
                                  9930 Mesa Rim Road St. 200
19                                San Diego, CA 92121

20                                Kramer Law Office
                                  Melody A. Kramer
21                                9930 Mesa Rim Road, St.1600
                                  San Diego, CA 92121
22
     For the Defendants:          Niro, Scavone, Haller & Niro
23                                Raymond P. Niro, Jr.
                                  181 West Madison Street,
24                                Suite 4600
                                  Chicago, IL 60602
25
```

22

```
 1              THE COURT:  Unless, if you represent them, there is
 2   a consent, you know, a consent to jurisdiction of this court
 3   to enter the order allowing for it.
 4              MR. NIRO:  I don't think they have consented to
 5   jurisdiction here.  Just in response to the letter from          10:10:15
 6   plaintiff to Revere Plastics, they retained our services.  I
 7   know Ms. Goddard --
 8              THE COURT:  Normally when you want to get discovery
 9   from a nonparty that is out of district you have to go to the
10   court in that district.                                          10:10:30
11              MR. NIRO:  I think that would still apply here.
12              THE COURT:  Except if they consent to jurisdiction
13   in the court where the underlying case is pending.
14              MR. NIRO:  I haven't talked to Revere Plastics
15   about that, but I would be surprised if they consented to       10:10:46
16   that.  But, again, if an issue comes up, where if they are
17   scheduling to destroy this plant or destroy some molds, we
18   will certainly notify the court and notify plaintiff and at
19   that time they can inspect.
20              THE COURT:  What obligation -- if I have no           10:10:59
21   jurisdiction over them, what can I do to them?
22              MR. NIRO:  I don't think anything, Judge.
23              THE COURT:  Right.  So that's kind of a hollow
24   offer.
25              MR. NIRO:  If there is no jurisdiction then there    10:11:16
```

1   is no -- then there is nothing that we are talking about
2   today.
3           THE COURT: If they go to Missouri and they get an
4   order there, then there would be jurisdiction in Missouri, so
5   if they violated that order they would be held in contempt.    10:11:25
6           MR. NIRO: Right. If that's what your Honor is
7   suggesting, that they issue a subpoena from the Missouri
8   court, we can address it there.
9           THE COURT: They have to unless Revere consents to
10  jurisdiction in this court.                                    10:11:37
11          MR. NIRO: Right.
12          THE COURT: I'm going to grant that. The reason I
13  am going to grant it is they are not a party. They are
14  really under no obligation to keep the molds and store the
15  molds at their expense, and I think examination of the molds  10:11:48
16  is appropriate.
17          If they were a party then I would feel differently
18  at this point. But since they're not, you really need to
19  preserve evidence. And since I don't have jurisdiction over
20  them, the only way to do it is to allow you to apply for a    10:12:03
21  Rule 45 and Rule 34 subpoena.
22          MR. NIRO: Your Honor, just to clarify, what the
23  court is granting is that plaintiff can issue a Rule 45
24  subpoena; is that correct?
25          THE COURT: Right.                                      10:12:21